**John CLARK, Jr., Individually and d/b/a Clark's Brake & Wheel Alignment Service of Houston, Appellant,**

v.

**Ronald PRINGLE, Appellee.**

**No. 14283.**

Court of Civil Appeals of Texas.

Houston.

Jan. 30, 1964.

Rehearing Denied Feb. 20, 1964.

McGregor, Sewell, Junell & Riggs, Wm. E. Junell, Houston, for appellant.

Thomas G. Bousquet, Houston, for appellee.

COLEMAN, Justice.

This is a suit to recover the value of property destroyed by fire while in the possession of a bailee.

Appellee left his automobile with appellant for the purpose of having it repaired. When he returned for it he was informed that it had been destroyed by fire. Appellee filed suit, alleging these facts and further alleging that the destruction of his automobile by fire was proximately caused by certain acts of negligence on the part of appellant. On trial of the case the jury found that appellant failed to store the vehicle in a reasonably safe place and that appellant failed to keep a proper lookout for fire on his premises at the time and on the occasion in question; that each failure was negligent and the proximate cause of appellee's damage.

Appellant contends that there is no evidence, or insufficient evidence, to support the findings of the jury, and that the trial court erred in failing to sustain his motions for instructed verdict and for judgment notwithstanding the verdict.

The testimony produced at this trial would support different conclusions and inferences, but is not conflicting in material particulars. Appellee's vehicle was stored in a building having a concrete floor, outside walls and roof of sheet metal, and joists, rafters and studding of $2 \times 4$ timbers. All of the wooden portions of the structure were enclosed by the sheet metal except the barge rafter, which was the last rafter on the gable roof. This barge rafter was attached to the ridge, also of wood, to which other rafters supporting the roof were attached.

A witness testified that he saw smoke, which appeared to be paper smoke, some time before he went to the scene of the fire. When he arrived at the scene, about five minutes before the fire department was called, grass had burned up to a six foot high fence, which was located about four feet from the building in which appellee's car was stored. When he arrived at the scene the fence had begun to burn at the bottom. It was a small fire which he could have extinguished with a garden hose. Other people were there, but none of them had a hose.

The fire department was called at 4:29 p. m. to put out a grass fire and a tank truck arrived soon thereafter. The witness saw no evidence of a fire inside the building and was concerned only with saving the fence. When the pumper truck arrived, the fence was blazing and soon after it arrived, at 4:36 p. m., additional trucks were called. The pumper truck "was doing pretty good for a little while but he ran out of water." The fire from the fence caught the barge rafter on fire. The firemen just about had

the fire on the barge rafter contained when the water ran out. The fire was going pretty good when the other trucks got there.

This witness testified that the only way the fire could have gotten in the building was for the barge rafter to have gotten hot enough to catch the ridge on fire. "That is the only way I could see for it to get inside would be for that single board at the top to be on fire. It was or was near on fire. It was near it, I will say that, but I don't know how it ever got in there on that one board but it sure was going. *I mean just all of a sudden.*" (emphasis added)

Two other witnesses said that they heard the sirens on the fire trucks and saw the smoke a short distance from their place of business. They arrived at the scene about the same time as the fire trucks and at that time, one testified, the building was "in complete flames"; "like a match box"; "a fierce fire"; "flames shooting out the top from all directions." The other described it as a "tremendous fire"; "a blazing inferno". The roof collapsed within three or four minutes after they got there. The heat was so intense that a building twenty to thirty feet away began to burn.

One of appellant's employees was notified by telephone of the fire. When he stepped out the door of the building in which he was working, he saw flames around the top of the door. The building was locked some time before two o'clock and he didn't know where the key was and he didn't have any way to get in, "not even a good sized bar." He assumed there was a "pretty good fire." He immediately went back to the telephone to call the fire department, but the telephone was dead. He heard the fire truck just after he tried to call.

An inflammable cleaning fluid was used to clean parts, but it was not stored in the building which burned (called the R & R Building). Employees had been working in the building that morning. The building had not been swept. There was an accumulation of oily rags in the building. A metal container with a tight cover was provided for these rags, but there was no testimony from appellant or his employees concerning the condition of the premises on the day of the fire.

Appellant testified that he provided no type of special protection for the building. He testified that before the fire he customarily looked around for fire hazards and policed the place. He had seen the trash and barrels 15 to 20 feet behind his fence, and that the barrels looked like they were used to burn trash. He also testified that he drove down the road by the lot where the trash barrels were located in testing cars, but that he hadn't particularly thought about fires. There was grass and weeds on the lot near the barrels. Appellant had the grass cut between the fence and his building about every two weeks at which time it would sometimes be 12 inches high. He testified that transmission fluid was kept in the building and that while he didn't think it would burn and had never seen it burn, he didn't know whether it would burn or not.

Another building of similar construction located along the fence line four to five feet from the R & R Building did not burn.

The jury might well have reasoned that since the swiftness with which the fire developed could not be explained by the flammable nature of the building itself, it must have been caused by material left in it by appellant's employees. Such a conclusion would be reinforced by the size and fierceness of the fire. The fact that within ten minutes after the barge rafter caught on fire the flames were so intense inside the building that the firemen who forced open the doors were unable to enter the building safely, is circumstantial evidence that something other than the $2 \times 4$ studding and rafters were burning. The evidence establishes that an accumulation of oily rags was in the building. The fact that the building of similar construction five feet away from this fierce fire did not burn could also be considered by the jury as a circumstance showing that appellee's car was not stored in a reasonably safe place, as is the fact

that the employees on the premises had no means of gaining entrance to the building.

There was sufficient evidence from which the jury could have concluded that appellant knew that trash was burned in open barrels 15 feet behind the wooden fence in the midst of high grass and weeds and should have realized the danger of fire being communicated to his building.

■ Under these circumstances we consider that the jury findings to the effect that appellant was negligent in storing appellee's automobile in an unsafe place proximately causing damage to appellee's automobile is supported by evidence of probative force. After considering all of the evidence we have also concluded that there is sufficient evidence to support such findings.

The judgment of the trial court is affirmed.